UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN THE MATTER OF THE ADMINISTRATIVE INSPECTION<br><br>In re:  ZINA FARMS SITE<br>        1 Zina Road<br>        Parcel ID: 108565<br>        Hudson, Massachusetts | Case No. 22-MJ-1728-JCB |

**MEMORANDUM IN SUPPORT OF
UNITED STATES' APPLICATION FOR AN
<u>ADMINISTRATIVE WARRANT UNDER CERCLA SECTION 104(e)</u>**

## I. <u>INTRODUCTION</u>

The United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), seeks an Administrative Warrant under Section 104(e) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9604(e). EPA seeks access to property totaling approximately 9.6 acres located at 1 Zina Road, Hudson, Massachusetts ("Zina Farms Site" or "Site"). EPA seeks this warrant because the owner of the Site – which may present an imminent danger to public health and the environment, and, therefore, needs immediate evaluation – has shown a consistent pattern of failing to respond to EPA's repeated attempts to gain access to the Site voluntarily.

The Site is defined by the Town of Hudson Department of Assessors as Lot 67 on Tax Map 13 and Parcel ID 108565 and described in the Quit Claim Deed in Book 21405 on page 357 in the Middlesex County Registry of Deeds. *Affidavit of Cooper Kimball-Rhines* ("Kimball-Rhines Aff."), ¶ 1, Ex. 1. The Site's owner of record is Thomas F. Zina. *Id.* at ¶ 5. EPA has sent multiple letters to his current address and left multiple messages at his current phone number, but Mr. Zina has not responded to any of EPA's attempts to contact him. *Id.* at ¶¶ 8-13, 15.

Thus, the United States seeks a warrant providing EPA with access to the Site for a period of 180 days to address hazardous substances, pollutants, and/or contaminants that are or may be at the Site, which may be affecting downstream areas. *Affidavit of Nico James* ("James Aff."), ¶¶ 11-12. Specifically, in accordance with CERCLA Section 104(e), 42 U.S.C. § 9604(e), EPA seeks to conduct a Preliminary Assessment and Site Investigation ("PA/SI") to determine the extent to which the release or threat of release of hazardous substances, pollutants, and/or contaminants at the Site pose a danger to public health or the environment based on concerns that hazardous substances, pollutants, and/or contaminants from the Site may be contaminating the Town of Hudson's downstream drinking water wellfield. *Id*. During the PA/SI, EPA personnel and their contractors would: (1) conduct site walks within the Zina Farms Site to determine how and where to perform sampling; (2) survey the Site and take measurements of the topography to obtain information relevant to the selection of sampling locations on the Site; (3) take photographs and/or video to document conditions at the Site; (4) collect soil, sediment, water, and air samples from the Site as may be determined necessary; (5) collect samples from/of, and/or conduct analysis of, solids and/or liquids generated, stored, or disposed of on-site; (6) drill or excavate holes for the investigation of conditions under the ground surface of the Site; (7) take other actions related to the investigation of surface or subsurface contamination resulting from the release or threat of further releases on the Site; and (8) review and copy any documentation, if discovered, pertaining to hazardous substances, pollutants, or contaminants, or hazardous wastes, that were generated, treated, stored, or disposed of at the Site. *Id.* at ¶ 11. These measures are necessary to assess the extent of the contamination at the Site and to determine whether a response action may be needed to address contamination at the Site. *Id.*

The United States respectfully requests that the Court issue a warrant because: (1) the United States is authorized under Section 104(e) of CERCLA to enter the Site and conduct the planned actions, but has not been able to obtain the owner's voluntary authorization for access; (2) the Court is authorized under law to issue the requested warrant; and (3) such a warrant is justified because the contamination on the Site may pose a threat to public health or the environment. Indeed, the Massachusetts Department of Environmental Protection ("MassDEP") has specifically requested that EPA conduct a PA/SI there. *Id.* at ¶ 8, Ex. 4.

Accordingly, by its Application and this supporting Memorandum, with accompanying Affidavits of EPA's On-Scene Coordinator ("OSC") Nico James and EPA employee Cooper Kimball-Rhines, the United States seeks entry and access to the Site to determine the extent to which current conditions on the Site pose a danger to public health and/or the environment.

## II. FACTUAL BACKGROUND

A. Site Background

The Site consists of one parcel totaling approximately 9.6 acres and is located at 1 Zina Road, in the Town of Hudson, Middlesex County, Massachusetts. Kimball-Rhines Aff. at ¶ 1, Ex. 1. The Site is undeveloped, with no buildings or other structures present, and is zoned residential. James Aff. at ¶ 5. The Site is bordered to the north and west by residential neighborhoods, to the west by Zina Road and Cox Street, to the east by the former Hudson/Stow Landfill, and to the south by the Assabet River, containing wetlands along its border with that river. *Id.* at ¶ 5, Ex. 1. The Site presently appears to be unoccupied. *Id.* at ¶ 5.

From the 1940s until 2002, the Zina family operated a livestock farm on a portion of the Site, with surrounding residential properties. The residential properties are no longer owned by the Zina family, although ownership of the Site-proper still remains in the hands of Thomas

3

Zina, as discussed below. *Id.* at ¶ 6. In May 1988, a complaint was filed with the Massachusetts Department of Environmental Quality Engineering in which a neighbor reported witnessing "debris and other trash dumped at the farm." *Id.* at ¶ 6, Ex. 2 at 4. In the years following the complaint, contractors of MassDEP performed removals of contaminated materials on portions of the Site and surrounding properties. Of note, they removed 12, and then subsequently 90-100, buried drums of waste. *Id.* ¶ 7, Ex. 2 at 6-8. This waste contained contaminants consisting of heavy metals, such as arsenic, barium, chromium, lead, and mercury, and volatile and semi volatile organic compounds, including 1,2-dichlorobenzene, ethylbenzene, naphthalene, toluene, 1,2,4-trimethylbenzene, and xylenes. *Id.* at ¶ 7, Ex. 3. These are all hazardous substances under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); *see* 33 U.S.C. § 1317(a), 40 C.F.R. § 401.15 (1,2 dichlorobenzene, arsenic, chromium, lead, mercury, ethylbenzene, naphthalene, toluene); 33 U.S.C. § 1321(b)(2), 40 C.F.R. § 116.4 (barium, xylenes); 42 U.S.C. § 6921, 40 C.F.R. Part 261 Subpart D (1,2,4-trimethylbenzene).

On January 25, 2021, MassDEP requested EPA's assistance to perform additional assessment activities at the Site. *Id.* at ¶ 8, Ex. 4. In particular, MassDEP wants assistance in determining whether hazardous substances, pollutants, and/or contaminants at the Site, including Per- and Polyfluoroalkyl Substances ("PFAS"), have caused groundwater contamination that is/are impacting the public drinking water supply for the Town of Hudson, as the Site is located upstream from the Town's Chestnut Street wellfield. *Id.* at ¶ 9, Ex. 5. In particular, MassDEP noted that sampling of the Town's drinking water supply wells detected PFAS, a type of contaminant MassDEP believes may be associated with paints. *Id.* at Ex. 5. Many of the previously removed drums of waste on the Site were thought to contain solidified paint-related wastes, *id.* at Ex. 2 at 8, and therefore MassDEP specifically requested that EPA "include the

analysis of PFAS compounds as potential contaminants of concern associated with the formerly buried drums at the Site." *Id.* at ¶ 9, Ex. 5.

B. EPA Needs Access To The Site To Assess Whether Cleanup Is Necessary.

Due to concerns related to previously buried wastes at the Site that may have impacted groundwater linked to public drinking water in the area, EPA needs access to collect data and information to assess whether a response action is necessary to address potential public health and environmental hazards posed by the Site. *Id.* at ¶¶ 9, 11. Specifically, according to EPA's On Scene Coordinator ("OSC")[1] for the Site: there is a release or threat of release of hazardous substances, pollutants, and/or contaminants at or from the Site, including but not limited to the metals and volatile and semi volatile organic compounds noted above; access to the Site is necessary to evaluate Site conditions to determine whether a threat to human health or the environment is posed by Site conditions; and performance of a PA/SI is therefore warranted to determine whether a further response action should be implemented under CERCLA. *Id.* at ¶¶ 6, 11, 13-14.

C. EPA Sought Permission To Enter The Site, Which Was Not Forthcoming.

EPA performed research to verify the ownership of the Site as the first step toward gaining the owner's agreement for access. Kimball-Rhines Aff. ¶ 2, 5, 7. Based on a 1991 deed recorded in the Middlesex County Registry of Deeds, EPA determined that Thomas Zina is the Site's owner. *Id.* at ¶ 5, Exs. 1, 3. EPA staff learned Mr. Zina's last known address and phone number from MassDEP, James Aff. ¶ 10, and performed research to confirm this information, Kimball-Rhines Aff. ¶ 7, Ex. 4. However, EPA has been unsuccessful in its repeated efforts to contact Mr. Zina and obtain his consent to access. *Id.* at ¶ 5.

---

[1] An OSC is the federal official predesignated by EPA to coordinate and direct hazardous substance removal actions under the National Contingency Plan. 40 C.F.R. § 300.5.

Specifically:

- On January 20, 2022, EPA sent an access request letter to Mr. Zina via UPS Next Day Delivery to his home at 988 Dana Hill Road, New Hampton, New Hampshire 03256, which arrived there on January 21. *Id.* at ¶ 8, Ex. 3. The letter requested an answer by February 3, 2022, but EPA never received a response from Mr. Zina. *Id.* at ¶ 8.

- On January 31, 2022, EPA staff called Mr. Zina, but he did not answer. *Id.* at ¶ 9. The voicemail message for the phone number EPA staff called identified the number as belonging to Thomas Zina. *Id.* EPA staff left a voicemail explaining the access request and offering to answer questions, but Mr. Zina never returned the call. *Id.*

- On February 2, 2022, EPA staff called Mr. Zina again to notify him that a second access request letter would be arriving at his home soon. *Id.* at ¶ 10. Once again, this call was not answered and EPA staff left a voicemail which was never returned. *Id.*

- Also on February 2, 2022, EPA sent a second access request letter to Mr. Zina via UPS Next Day Delivery, which arrived at his Northampton home on February 3. *Id.* at ¶ 11, Ex. 4. A response was requested by February 17, 2022, but EPA never received a response from Mr. Zina. *Id.* at ¶ 11.

- On February 7, 2022, EPA staff called Mr. Zina again, but did not leave a message when he again did not answer. *Id.* at ¶ 12.

- On February 9, 2022, EPA staff called Mr. Zina once again. *Id.* at ¶ 13. As before, this call was not answered and EPA left a voicemail which was never returned. *Id.*

To date, Mr. Zina has still never responded to any of EPA's attempts to contact him. *Id.* at ¶ 15.

On February 15, 2022, EPA staff, hoping to determine another way to reach Mr. Zina, contacted Aldo Cipriano, attorney for the Town of Hudson, who had been managing tax issues related to Mr. Zina's property for the Tax Collector's Office. *Id.* at ¶ 14. Mr. Cipriano confirmed that the New Hampton address to which EPA had sent access request letters was the most recent on file with the Town for Mr. Zina and, in fact, was where the Town had been sending tax bills to Mr. Zina. *Id.*

In summary, EPA has been unable to secure the owner's consent for EPA to access the Site, despite diligent efforts to contact him.

## III. DISCUSSION

The United States seeks a warrant to enforce its right under CERCLA to enter a site where there has been a release or threatened release of hazardous substances, pollutants, and/or contaminants. It is necessary for EPA and its representatives to enter this Site to assess the threat to the public health and/or the environment posed by the release or threatened of release of, hazardous substances, pollutants, and/or contaminants. This situation squarely falls within the access authority granted to EPA and its authorized representatives by Section 104(e) of CERCLA, 42 U.S.C. § 9604(e). Issuance of the requested warrant is authorized by law, and is reasonable given the valid public interest for EPA's proposed actions and the limited impact of the intrusion.

A. Legal Standards

    1. EPA's CERCLA Section 104(e) Access Authority

Congress enacted CERCLA, 42 U.S.C. §§ 9601-9675, in response to widespread concern over the severe environmental and public health effects arising from the improper disposal of hazardous wastes and other hazardous substances. *See generally Atlantic Richfield Co. v. Christian*, 140 S.Ct. 1335, 1345 (2020); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1078, 1081 (1st Cir. 1986); *Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 922, 925 (D.C. Cir. 1985). EPA has broad authority to investigate and clean up hazardous waste sites and to enter such sites for those same purposes. *See* Sections 104(a), (b) and (e) of CERCLA, 42 U.S.C. §§ 9604(a), (b) and (e). Section 104(e)(1) authorizes the President or any duly designated representative to exercise the access authority of Section 104(e) for the broad purposes "of

determining the need for response, or choosing or taking any response action under [CERCLA], or otherwise enforcing the provisions of [CERCLA]." [2] 42 U.S.C. § 9604(e)(1).

CERCLA defines "response" to mean "remove, removal, remedy, and remedial action." 42 U.S.C. § 9601(25). A "removal" action is "the cleanup or removal of released hazardous substances from the environment," and may include "such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances." 42 U.S.C. § 9601(23). Section 104(b) of CERCLA specifically provides EPA with authority to undertake "investigations, monitoring, surveys, testing, and other information gathering" as EPA deems necessary or appropriate to identify the existence and extent of release or threat of release of hazardous substances, pollutants or contaminants at or from a site, and the extent of danger to the public health or welfare or to the environment. 42 U.S.C. § 9604(b)(1).

Under Section 104 of CERCLA, EPA and its representatives are authorized to enter property to conduct response activities when EPA determines that "there is a reasonable basis to believe there may be a release or threat of release of a hazardous substance or pollutant or contaminant." 42 U.S.C. § 9604(e)(1).[3] Once EPA determines that grounds exist for entry, its authority to enter is far reaching. *See United States v. Tucard*, 738 F. Supp. 2d 243, 246 (D. Mass. 2010) ("If EPA determines that grounds for entry exist, a court must enjoin any interference with EPA's entry to the property unless EPA's demand for entry is 'arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law'"). Section 104(e)(3)

---

[2] The President has delegated his authority under Section 104 of CERCLA to EPA. Exec. Order No. 12580, §§ 2(g), (i) and (j)(2), 52 Fed. Reg. 2923, 2925 (1987).

[3] Section 101(22), 42 U.S.C. § 9601(22), defines "release" to mean "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)."

authorizes EPA and its representatives to enter any vessel, facility,[4] or establishment associated with a release or threat of release of hazardous substances, pollutants, and/or contaminants, including property where entry is needed "to determine the need for response or the appropriate response or to effectuate a response action . . ." 42 U.S.C. § 9604(e)(3). Section 104(e)(6) authorizes EPA to secure such access in any lawful manner. 42 U.S.C. § 9604(e)(6).

2. Issuance of an Administrative Warrant

"[W]here Congress has granted an administrative agency the power to enter and make inspections, the agency has the authority to seek a warrant." *Boliden Metech, Inc. v. United States*, 695 F. Supp. 77, 82 (D.R.I. 1988). "[N]on-consensual administrative searches may be accomplished through warrants of inspection when the administrative agency is granted by Congress the power of entry to make its inspections." *Midwest Growers Co-op. Corp. v. Kirkemo*, 533 F.2d 455, 462 (9th Cir. 1976). Section 104(e) of CERCLA expressly authorizes entry by any duly designated officer, employee, or representative of the President. *See* 42 U.S.C. § 9604(e). In fact, federal courts routinely enforce EPA's right of access under environmental statutes, such as CERCLA, by issuing warrants.[5]

---

[4] Section 101(9), 42 U.S.C. § 9601(9), defines "facility" as:

> (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

[5] *See, e.g., Koppers Indus., Inc. v. EPA*, 902 F.2d 756, 758 (9th Cir. 1990) (district court denying as moot a motion to quash warrant and upholding district court's finding that magistrate's warrant was properly issued under authority of CERCLA § 9604(e) because there was "'reasonable cause to believe that there may be a release or threat of a release of a hazardous substance or contaminant.'"); *see also National-Standard Co. v. Adamkus*, 881 F.2d 352, 363 (7th Cir. 1989) (upholding issuance of warrant to EPA under the Resource Conservation and Recovery Act); *Mobil Oil Corp. v. EPA*, 716 F.2d 1187 (7th Cir.1983) (upholding issuance of

9

Unlike the more rigorous probable cause standard of criminal law, probable cause to justify an administrative warrant can be had not only with a showing of "specific evidence of an existing violation" but also where "'reasonable legislative or administrative standards'" are satisfied for conducting a particular inspection. *Marshall v. Barlow's Inc.*, 436 U.S. 307, 320-21 (1978) (quoting *Camara v. Mun. Court*, 387 U.S. 523, 538 (1967)); *see, e.g., United States v. Blanchard*, 495 F.2d 1329 (1st Cir. 1976) (upholding issuance of an administrative inspection warrant, finding that it "easily comport[ed] with existing administrative and legislative inspection criteria, and would thus be reasonable"). This relaxed standard rests on the premise that the interests of protecting public health and safety under an established legislative scheme may justify government intrusion upon the privacy rights of a public establishment. *E.g.*, *Martin v. Int'l Matex Tank Terminals-Bayonne*, 928 F.2d 614, 620–22 (3d Cir. 1991) (explaining the standard for administrative warrants under the Occupational Health and Safety Act). For administrative warrants, including those issued under CERCLA, "reasonableness is . . . the ultimate standard." *Camara*, 387 U.S. at 539.

The standard for an administrative warrant under CERLCA Section 104(e) is not difficult to meet. *See, e.g.*, *United States v. Fisher*, 864 F.2d 434, 438 (7th Cir. 1988) (describing Section 104(e)'s standard as "undemanding"). The United States need only show that its "demand for access, grounded in 'a reasonable basis to believe there may be a release or threat of release of a hazardous substance,' is not 'arbitrary and capricious, an abuse of discretion,' or otherwise illegal." *Id.; see also Tucard*, 738 F. Supp. 2d at 246. This standard is sufficient to ensure that "the decision to enter and inspect will not be the product of the unreviewed discretion of the enforcement officer in the field." *See v. City of Seattle*, 387 U.S. 541, 545 (1967); *see also*

---

warrant to EPA under the Clean Water Act); *Public Service Co. v. EPA*, 682 F.2d 626 (7th Cir. 1982) (upholding issuance of warrant to EPA under the Clean Air Act).

*Donovan v. Enter. Foundry, Inc.,* 751 F.2d 30, 34 (1st Cir. 1984) (explaining that the administrative warrant procedure ensures that "the decision of '[w]hen the right of privacy must reasonably yield to the right of search is * * * [made] by a judicial officer, not by a policeman or government enforcement agent'").

Significantly, such a warrant may be obtained on an *ex parte* basis. *In re Yoder's Slaughterhouse*, 519 F. Supp. 2d 574, 579 (D. Md. 2007) (recognizing that EPA may obtain an *ex parte* warrant under CERCLA Section 104(e) to access an abandoned slaughterhouse); *see also Stoddard Lumber Co. v. Marshall*, 627 F.2d 984 (9th Cir. 1980); *Bunker Hill Co. Lead and Zinc Smelter v. EPA*, 658 F.2d 1280, 1285 (9th Cir.1981).[6] When seeking an *ex parte* warrant under CERCLA, the United States must demonstrate to the Court's satisfaction "that the owner of the targeted property cannot be identified despite *reasonable diligence*, or that the owner will not consent to the EPA's proposed activities." *In re Yoder's Slaughterhouse*, 519 F. Supp. 2d at 579 (emphasis added). Here, however, the United States is serving the present pleadings upon the property owner's last known address.

B. <u>Application to this Matter</u>

    1. <u>EPA is Authorized under CERCLA Section 104(e) to Access the Site.</u>

Section 104(e) of CERCLA authorizes EPA's proposed investigation of the Site. EPA may exercise its access authority under Section 104(e) if it has "a reasonable basis to believe there may be a release or threat of release of a hazardous substance or pollutant or contaminant" from a site. 42 U.S.C. § 9604(e)(1). This Site has a history of waste dumping and contamination, which led to several removals over many years of materials including shredded rubber waste,

---

[6] One court has even recognized that "*ex parte* proceedings are the normal means by which warrants are obtained in both criminal and administrative actions." *National-Standard Co.*, 881 F.2d at 363.

contaminated soil, and 90-100 buried drums of waste. James Aff. ¶ 7, Ex. 2 at 6-8. MassDEP has recently become concerned that potential contamination from this Site has impacted the groundwater, which in turn may be impacting public drinking water supply in the Town of Hudson, because the Town's wellfield is downgradient to the Site. *Id.* at ¶¶ 8-8=9. That led MassDEP to request EPA's assistance in assessing potential contamination at the Site. *Id.* at ¶ 8, Ex. 4. Accordingly, EPA has a reasonable basis to believe that there is an actual or threatened release of hazardous substances, pollutants, and/or contaminants at the Site. *Id.* at ¶ 13.

In addition, the particular actions that EPA expects to perform during the PA/SI are authorized by CERCLA, as all of the proposed actions for which access is sought are "for the purposes of determining the need for response, or choosing or taking [a] response action." 42 U.S.C. § 9604(e)(1). The specific proposed activities are (1) conducting site walks within the Zina Farm Site to determine how and where to perform sampling; (2) surveying the Site and taking measurements of the topography to obtain information relevant to the selection of sampling locations on the Site; (3) taking photographs and/or video to document conditions at the Site; (4) collecting soil, sediment, water, and air samples as may be determined necessary; (5) collecting samples from/of, and/or conducting analysis of, solids and/or liquids generated, stored, or disposed of on-site; (6) drilling or excavating holes for investigation of conditions under the ground surface of the Site; (7) taking other actions related to the investigation of surface or subsurface contamination resulting from the release or threat of further releases on the Site; and (8) reviewing and copying any documentation, if discovered, pertaining to hazardous substances, pollutants, or contaminants, or hazardous wastes, that were generated, treated, stored, or disposed of at the Site (as authorized by Section 9604(e)(1), (2), (4) of CERLCA). James Aff. ¶ 11; 42 U.S.C. § 9604(e)(1), (2), (4).

Finally, the Site falls within the categories of properties that EPA may access under Section 104(e). Section 104(e)(3) authorizes entry to four overlapping categories of property or places:

> (A) Any vessel, facility, establishment, or other place or property where any hazardous substance or pollutant or contaminant may be or has been generated, stored, treated, disposed of, or transported from.
>
> (B) Any vessel, facility, establishment, or other place or property from which or to which a hazardous substance or pollutant or contaminant has been or may have been released.
>
> (C) Any vessel, facility, establishment, or other place or property where such release is or may be threatened.
>
> (D) Any vessel, facility, establishment, or other place or property where entry is needed to determine the need for response or the appropriate response or to effectuate a response action under [CERCLA].

42 U.S.C. § 9604(e)(3). The Site falls within all four categories.

For the reasons stated above, EPA has reason to believe that hazardous substances, pollutants, and/or contaminants were disposed of at the Site, that a release or threatened release of hazardous substances, pollutants, and/or contaminants has occurred at the Site, and that a continuing threat of a release exists at the Site. Moreover, the Site is a facility, establishment, or other place or property where entry is needed by EPA in order to ascertain the extent of the contamination, and to determine the appropriate response action. *See* James Aff. ¶ 13. Accordingly, the Site qualifies under Section 104(e)(3) as a property where entry is authorized, and Section 104(e)(1) empowers EPA, with the Court's approval, to enter the property to conduct the planned actions.

2. <u>EPA has Shown Probable Cause for the Issuance of a Warrant.</u>

Probable cause exists to issue an administrative warrant when reasonable legislative or administrative standards exist for conducting a particular inspection. The attached affidavit of

Nico James overwhelmingly demonstrates the there is a reasonable basis for the entry sought here.

EPA has specific evidence of conditions on the Site for which it has statutory authority to investigate and mitigate to the extent necessary. Conditions on the Site over many decades included findings of 90-100 buried drums of waste. James Aff. at ¶ 7, Ex. 2 at 6-8. Metals, volatile organic compounds and semi-volatile organic compounds were all identified at the Site in previous investigations. *Id.* at ¶ 7, Ex. 3. And, more recently, State authorities have identified PFAS contamination in the local drinking water supply which they believe could be emanating from the Site due to its downgradient location. *Id.* at ¶ 9, Ex. 5. These Site conditions provide a reasonable basis to believe that there may be a release or threat of release of a hazardous substance or pollutant or contaminant into the environment. Additionally, the Site falls within each of the four categories of property or places EPA has authority to enter to investigate. *See* 42 U.S.C. § 9604(e)(1), (3). Thus, the reasonable basis standard to issue a warrant has been met.

Further, as evidenced by the affidavits of Nico James and Cooper Kimball-Rhines, it appears that the Site has effectively been abandoned by Mr. Zina. EPA has been unable to obtain a voluntary grant of access from the owner, despite diligent effort, by his being unresponsive to EPA's numerous requests to enter the property.

Here, the period during which EPA intends to perform the PA/SI at the Site is limited to a reasonable and limited period of 180 days. James Aff. ¶ 12. As asserted by Ms. James, a 180-day period is needed to perform a site walk and to coordinate with EPA laboratory services field personnel, along with other contractors, to determine the extremely technical process for collecting water and groundwater samples, and plan for unforeseen weather conditions and potential delays due to COVID-19. *Id.* The 180-day time period is also needed because

evaluation of initial sample results and other investigatory work may indicate that additional sampling or other investigatory work is needed. *Id.* Overall, the PA/SI work may entail an iterative process of sampling, laboratory analysis, and evaluation. The access requested is minimally intrusive given that the Site currently appears to be unoccupied and no buildings or structures exist on the land. Thus, there will be no interference with any ongoing activity at the Site. On the basis of these facts and the valid public interest to be served by EPA's entry onto the Site, the issuance of an administrative warrant is justified.

> 3. While Courts have authorized *ex parte* warrants under environmental statutes, the United States is serving the property owner, Mr. Zina.

Issuance of a warrant is both necessary and justified because EPA has made reasonable efforts to obtain permission to enter the Site from the owner, including many calls and letters, but Mr. Zina has refused to respond in order to provide voluntary access. Kimball-Rhines Aff. at ¶ 8-13, 15. EPA has reason to believe that there are hazardous substances, pollutants and/or contaminants on the Site that may pose a risk to human health and the environment. James Aff. at ¶ 6-9, 11, 13-14. EPA's entry upon the property to perform the limited activities listed in the proposed Warrant will not interfere with any known activities at the Site, given the Site's apparent abandoned status. Id. at ¶ 5, 11-12.

As described above, courts have authorized *ex parte* warrants under various environmental statutes. See p. 11, *infra*. Even though the United States' could proceed *ex parte*, the United States has nevertheless sent today, consistent with the Certificate of Service, a copy of this application and supporting documents, via FedEx and first class mail, to the property owner, Thomas F. Zina.

## IV. CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court issue the proposed Administrative Warrant authorizing EPA and its representatives to enter the Site for the purposes identified in the Warrant.

Respectfully submitted,

Henry S. Friedman
Assistant Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

Dated: May 5, 2022

*/s/ Mae Bowen*
Mae Bowen
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 532-3345
E-mail: mae.bowen@usdoj.gov

Rachael S. Rollins
United States Attorney

*/s/ Annapurna Balakrishna*
Annapurna Balakrishna
Assistant United States Attorney
United States Attorney's Office
District of Massachusetts
John Joseph Moakley Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts, 02210
Telephone: (617) 748-3111
E-Mail: annapurna.balakrishna@usdoj.gov

<u>OF COUNSEL:</u>

Michelle Lauterback
Senior Enforcement Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 1
5 Post Office Square, Suite 100
Boston, MA 02109